■ In the Matter of the Accounting of EDWARD DUCHNOWSKI, as Executor of VICTORIA DUCHNOWSKI, Deceased, Appellant. WESLEY DUCHNOWSKI et al., Respondents.— Decree affirmed, without costs. Memorandum: Testatrix died on August 15, 1967. Her will dated June 8, 1961 devised her 295-acre farm to her son, the appellant herein. The residue of the estate was left to testatrix' five remaining children in equal shares. Prior to her death, testatrix and her husband (who predeceased her) contracted to sell the farm to appellant and his wife in 1957. In 1965, after one half the purchase price had been paid, testatrix delivered a deed to appellant and took back a bond and mortgage which provided that the balance of principal and interest due and not paid at the time of her death would be due and payable five years thereafter. Appellant argues that the testatrix' will passed the interest in the bond and mortgage to him, relieving him of the obligation to pay the balance due on the principal and interest at the time of her death. We do not agree with this contention. In *Matter of Meyer* (174 Wis. 178), relied on by

appellant, is readily distinguished since it contained a specific direction by testatrix that no further payment be required on the indebtedness (land contract and later a mortgage) after her death, and no contrary intent was expressed in the language of the mortgage. There is a presumption that testamentary language which describes real property does not pass a mortgage interest therein unless there is something in the will or the surrounding circumstances to show a contrary intent (2 Davids, New York Law of Wills, § 764). Neither the testatrix' will, executed in 1961, nor the surrounding circumstances support a conclusion that testatrix intended to pass to appellant the mortgage interest given by appellant and his wife to testatrix four years later in 1965. The dissent relies upon the language used in the will and her use of the word "absolutely" and her use of the phrase "give, devise and bequeath". However, it is undisputed that the testatrix signed all documents in the record with an "X" and it is claimed without contradiction that she could neither read nor write. It does not appear reasonable or plausible, therefore, to derive her intention from the technical language of the will. On the other hand, the mortgage instrument expressly and clearly provided that in the event testatrix died prior to full payment of the mortgage debt, the balance then owing was to be paid within five years of testatrix' death. A more reasonable interpretation of the surrounding circumstances, therefore, would seem to be that while testatrix intended that there be no dispute between her survivors with respect to the fact that appellant was to have the farm, she also intended that he was to pay the agreed amount for it. The decree of the Surrogate should be affirmed. All concur, except Moule, J., who dissents and votes to reverse the decree in the following memorandum: Testatrix and her husband acquired a farm as tenants by the entirety in 1941. They contracted to sell it to their son Edward and his wife in 1957. Testatrix' husband died in 1960 and on June 8, 1961 testatrix executed a will leaving her farm to her son Edward and the remainder of her estate to her other five children. When her son had paid one half of the purchase price, testatrix gave him a deed and took back a mortgage, pursuant to the terms of the agreement. The majority, in determining that the mortgage on the farm does not pass to Edward, rely on the general principle that testamentary language which describes real property does not pass a mortgage interest in it unless the surrounding circumstances show a contrary intent. I believe the surrounding circumstances do show a contrary intent. In a short, simply-written will, after a direction that debts and funeral expenses be paid, testatrix provided: "SECOND: I give, devise and bequeath to my son Edward Duchnowski my farm containing approximately 295 acres of land and situate on the upper West Leyden Road together with all livestock and farm equipment owned by me at the time of my decease, absolutely." If testatrix did not intend her son Edward to have the farm free and clear of the mortgage, there was no reason for this provision in her will. Testatrix' will further provided: "THIRD: All the rest, residue and remainder of my estate, I give, devise and bequeath to my five remaining children * * * share and share alike" and finally appointed Edward to be the executor. Obviously he was cut out of the residuary clause and the remainder of the estate left to his five brothers and sisters because testatrix was making other provision for him. If she intended to disinherit Edward and give everything to her five remaining children, she would not have named him executor. Additionally, if Edward defaulted in making payments under the purchase agreement, his mother would have kept title and there would have been no question of his inheriting the farm with his wife. Ironically, by keeping up the payments and acquiring title to the farm and giving back a

bond and mortgage, he, according to the majority, should get nothing. The majority state that since the testatrix could neither read nor wirite, it does not appear reasonable or plausible to derive her intention from the technical language of the will. To me such inability on her part makes it difficult to think that she did not intend and believe that she was giving whatever interest she had in the farm to Edward and his wife, and that she was consequently leaving the remainder of her estate to her other five children. Under the circumstances testatrix intended to give the farm or whatever interest she had in connection with it to Edward and his wife. (Appeal from decree of Lewis County Surrogate's Court settling accounts.) Present — Marsh, J. P., Moule, Cardamone and Henry, JJ.